IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01455-REB-CBS

REBECCA S. MOORE,
    Plaintiff,
v.

ONE WEST/INDY MAC BANK,
    Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Plaintiff Ms. Moore's "Petition for Restraining Order" (doc. # 2) and "Petition for Temporary Injunction" (doc. # 3) (both filed June 21, 2010). Pursuant to the Order of Reference dated June 22, 2010 (doc. # 4) and the memorandum dated June 22, 2010 (doc. # 5), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, the pleadings, the entire case file, Ms. Moore's statements at the hearing held on July 6, 2010, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

On August 24, 2009, Ms. Moore and Philip Bryan Moore filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code based primarily on consumer debts. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 1 at p. 1 of 54). The Petition listed the real property at 905 Brighton Way, Colorado Springs, Colorado (the "905 Brighton Way real property") as scheduled for a foreclosure sale on August 26, 2009. (*See id.* at p. 6 of 54). Debtors are obligated to OneWest Bank FSB as evidenced by a Promissory Note in the principal amount of $157,200.00 that was executed on August 1, 2005. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 12 at p. 2 of 30). The Promissory Note is secured by a

1

Deed of Trust executed by the debtors to the Public Trustee for the County of El Paso, State of Colorado. (*See id.*). The Deed of Trust was recorded with the office of the Clerk and Recorder for El Paso County on August 8, 2005 at Reception No. 2051211563. (*See id.*). On August 26, 2009, enforcement of any judgment or lien against the debtors or property of the debtors' estate was stayed. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 10).

On September 24, 2009, the case was converted to Chapter 13. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 47). On November 12, 2009, debtors and OneWest Bank FSB entered into a Stipulation for Relief from Automatic Stay regarding the 905 Brighton Way real property. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 69). Debtors agreed to cure their default and arrearage on contractual mortgage payments for the 905 Brighton Way real property and to make regular monthly mortgage payments. (*See id.*). On November 13, 2009, the Bankruptcy Court approved the Stipulation between debtors and OneWest Bank FSB and vacated the previous Order granting relief from the stay. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 72). On January 15, 2010, the Bankruptcy Court confirmed the debtors' Amended Chapter 13 Plan. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 93).

On May 25, 2010, OneWest Bank FSB moved to enforce the terms of the Stipulation and for Relief from Stay regarding the 905 Brighton Way real property. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 100). The Bankruptcy Court granted OneWest Bank FSB relief from the stay "in order to proceed to take possession of, . . . and to foreclose on" the 905 Brighton Way real property. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 101).

Ms. Moore filed her "Original Petition" ("Complaint") in this civil action on June 21, 2010, alleging a multitude of legal grounds and violations, including criminal conspiracy, theft, fraud, RESPA (the Federal Real Estate Settlement and Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.*), the "Deceptive Practices Act," 15 U.S.C. § 45 *et seq.*, TILA (the

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*), unjust enrichment, breach of fiduciary duty, negligence and negligence *per se*, HOEPA (the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1639 *et seq.*), Regulation X (12 C.F.R. § 224, implementing provision of 15 U.S.C. § 78g(f)), Regulation Z (12 C.F.R. § 226, implementing provision of 15 U.S.C. § 1601 *et seq.* (TILA)), breach of implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. (*See* doc. # 1). Ms. Moore filed her Motions seeking injunctive relief that "Defendant be prevented from foreclosing on the property until and unless defendant prevails in the current litigation," and that the court "[e]nter judgment for plaintiff." (*See* doc. # 1). Ms. Moore argues that "defendant has scheduled the above referenced sale for Wednesday, June 9, 2010." (*See* doc. # 2). The sale has apparently not taken place as of this date. (*See* www.elpasopublictrustee.com FC # EPC200901721).

II.     Standard of Review

The standard for a temporary restraining order or preliminary injunction is well established.

> [T]he movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007); *accord, Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d. 1280, 1283 (10th Cir. 1996). "Three types of preliminary injunctions are disfavored: (1) preliminary injunctions altering the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions granting the moving party all the relief it could recover at the conclusion of a full trial on the merits." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (a party seeking such an injunction bears a "heightened burden" to show that "the exigencies of the

case support the granting of a remedy that is extraordinary even in the normal course") (*en banc*), *aff'd on other grounds*, 546 U.S. 418 (2006)). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

III.     Analysis

The court concludes that for several reasons Ms. Moore is not entitled to the injunctive relief she seeks.

A.     Procedural Requirements

"For a district court to grant a preliminary injunction, it must comply with the procedural requirements of Rule 65 of the Federal Rules of Civil Procedure." *Westar Energy*, 552 F.3d at 1224. The court previously advised Ms. Moore that "[t]he court may issue a preliminary injunction only on notice to the adverse party," citing Fed. R. Civ. P. 65(a)(1). (*See* doc. # 6 n. 1). The court further advised Ms. Moore that "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required," citing Fed. R. Civ. P. 65(b)(1). (*See id.*). Ms. Moore has not complied with the procedural requirements of Rule 65. She admittedly has not notified the adverse party or its attorney of her preliminary injunction motion, has not made any showing by affidavit or verified complaint that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, or certified in writing any efforts made to give notice and the reasons why it should not be required.

B.  Jurisdiction over Parties

Ms. Moore acknowledged at the July 6, 2010 hearing that the state district court has authorized the Public Trustee for El Paso County to sell the 905 Brighton Way real property at a foreclosure sale.

> In Colorado, consensual liens against real property are created by recordation of a deed of trust granted by the lender to the public trustee of the county where the property is situated. Foreclosure of such liens is a hybrid process governed by statute. The process involves issuance of orders by the state district court authorizing and confirming the sale. C.R.C.P. 120; § 38-38-105, C.R.S.  However, the process of conducting the sale and the parties' rights in such process are largely administrative.
> Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. § 38-38-101(1), C.R.S. The lender must also seek an order from the state district court authorizing the sale under Rule 120.  Once a sale is authorized, the public trustee advertises and conducts the sale. § 38-38-101(4), C.R.S.  The property is sold to the highest bidder who receives a Certificate of Purchase. Often, the purchaser is the holder of the deed of trust who bids all or part of the debt owed by the borrower.
> . . . After sale, the borrower and any junior lienholders may redeem the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges See § 38-38-101 to § 38-38-103, C.R.S. . . . If the redemption period passes, the holder of the Certificate of Purchase may seek an order confirming the sale and obtain a Trustee's Deed.

*Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC,* 2007 WL 1346591 * 2 (D. Colo. May 7, 2007).[1]  The Public Trustee for El Paso County is not a party to this lawsuit.  The court does not have jurisdiction to enjoin any action by the Public Trustee.

C.  Substantial Likelihood of Success

The injunctive relief Ms. Moore seeks is disfavored because it would alter the current status quo.  *See O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975.  Ms. Moore has not made a clear and unequivocal showing of her right to injunctive relief.  Ms. Moore's Motions and Complaint set forth few if any facts.  Nor did Ms. Moore provide any

---

[1] Copies of any unpublished decisions cited in this Recommendation are attached to the Recommendation.

facts at the July 6, 2010 hearing. Her Complaint and Petition for Temporary Injunction read more like manifestos against the residential loan industry than legal claims for relief. The factual record recited herein is based upon the court's independent research. Ms. Moore has provided little to no factual basis for her claims.

Ms. Moore has not demonstrated a sufficient likelihood of success on the merits. For example, RESPA sets forth the time limitations for bringing actions under § 2605:

> Any action pursuant to the provisions of section 6, 8, or 9 [12 USCS § 2605, 2607, or 2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 6 [12 USCS § 2605] and 1 year in the case of a violation of section 8 or 9 [12 USCS § 2607 or 2608] from the date of the occurrence of the violation. . . .

12 U.S.C. § 2614. The loan at issue in this case was closed on August 1, 2005. (*See* Bankruptcy Case No. 09-27404-EEB, doc. # 12 at pp. 4, 9 of 30). *See Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003) ("'the date of the occurrence of the violation' refers to the closing"). Ms. Moore filed this action on June 21, 2010, more than three years after the violation is alleged to have occurred. Ms. Moore has not presented any facts or specific arguments that equitable tolling applies. *See Mullinax v. Radian Guaranty, Inc.*, 199 F. Supp. 2d 311, 328 (M.D. N.C. 2002) ("RESPA's statute of limitations period is therefore subject to equitable tolling"). Pursuant to the three-year time limitation to bring claims under § 2605, Ms. Moore's claims under Section 2601 *et seq.* appear to be time barred.

Ms. Moore's claims alleged under TILA also fail as time-barred because she filed this case more than one year after the loan transaction occurred. An action for damages under TILA must be filed "within one-year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). *See Heil v. Wells Fargo Bank, N.A.*, 298 Fed. Appx. 703, 706 (10th Cir. (Utah) Oct. 9, 2008) (suit barred by one-year statute of limitations period of § 1640(e)). The limitations period on a TILA claim begins running on the date the loan documents are

signed.  *See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003).  *See also Delino v. Platinum Community Bank*, 628 F. Supp. 2d 1226, 1233 (S.D. Cal. 2009) (one year statute of limitations "typically run[s] from the date of the loan execution"); *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) ("the date of the occurrence of the violation is not later than the date the plaintiff enters the loan agreement") (internal quotation marks and citation omitted).  Ms. Moore does not dispute that she entered into the loan transaction in 2005.  Her Complaint was filed in June of 2010, almost five years later.  Therefore, from the face of the Complaint, Ms. Moore's claim for damages under TILA is time-barred under TILA's statute of limitation, 15 U.S.C. § 1640(e) *et seq.*, unless the statute of limitation has been equitably tolled.  *See Heil*, 298 Fed. Appx. at 706 (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706-08 (11th Cir.1998) (citing cases and recognizing all courts to directly consider issue have decided TILA is subject to equitable tolling)).  Ms. Moore has not presented any facts or specific arguments that equitable tolling applies.  Ms. Moore's TILA claims appear to be barred by the one-year limitations period of § 1640(e).

To the extent that Ms. Moore brings her Complaint pursuant to HOEPA, HOEPA is an amendment to TILA codified at 15 U.S.C. § 1639, enacted in 1994 to protect consumers against various practices in connection with certain high interest rate loans, which creates "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees."  *Lynch v. RKS Mortgage, Inc.*, 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (internal quotation marks and citation omitted).  In order to be subject to the protections afforded by HOEPA, one of two factors must be established.  "Either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing has to be greater than 8 percent of the total loan amount, or $400.00."  *Lynch*, 588 F. Supp. 2d at 1260 (citing 15 U.S.C. § 1602(aa)(1) & (3); 12 C.F.R. §

226.32(a)(1)). *See also D.M. Johnson Family Trust v. Countrywide Home Loans*, 2009 WL 3615690 * 6 (D. Utah Oct. 28, 2009) ("HOEPA applies if the interest rate of the loan exceeds a certain threshold, or if the total points and fees exceed eight percent of the loan.").

First, Ms. Moore has pled no facts that would provide a basis for the application of HOEPA to her loan. Second, TILA's one-year statute of limitations also applies to HOEPA claims. *See* 15 U.S.C. §§ 1639, 1640(e). *See also McDaniel v. Denver Lending Group, Inc.*, 2009 WL 1873581 * 14 (D. Colo. June 30, 2009) ("because HOEPA is an amendment of TILA, a one-year statute of limitations applies"). As Ms. Moore obtained the loan in 2005, filed the Complaint in 2010, and has not alleged or argued any facts to support equitable tolling, her HOEPA claim appears to be time barred. *McDaniel*, 2009 WL 1873581 at * 14 ("Plaintiff must provide a factual basis to toll the statute.").

"Depending upon the vantage point and the stage in the foreclosure process, there are potentially two applicable doctrines of abstention, *Rooker-Feldman* and *Younger*, both of which allow a federal district court to defer to the state adjudicative process." *Beeler*, 2007 WL 1346591 at * 2.

> The *Rooker-Feldman* doctrine, derived from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "prohibits federal suits that amount to appeals of state-court judgments." *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006). The doctrine is grounded in Congress' grant of appellate jurisdiction to review state court decisions exclusively to the Supreme Court. As such, a claim inviting a federal district court to review and reverse an unfavorable state court decision is outside of a lower federal court's jurisdiction. *See, e.g., Rooker*, 263 U.S. at 416.

*Rousseau v. Bank of New York*, 2009 WL 3162153 at * 3 (D. Colo. Sept. 29, 2009). The *Rooker-Feldman* doctrine "applies in cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Beeler*, 2007 WL 1346591 at * 2 (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544

U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine is applicable both to claims at issue in a state court order authorizing foreclosure sale and to claims that are "inextricably intertwined" with such an order. *Exxon-Mobil*, 544 U.S. at 286, n. 1 ("[A] district court [can]not entertain constitutional claims attacking a state-court judgment, even if the state court [did] not pass[ ] directly on those claims, when the constitutional attack [is] inextricably intertwined with the state court's judgment.") (internal quotation marks and citation omitted).

To the extent that Ms. Moore's claims seek to challenge or reverse a state court ruling in a foreclosure action, the *Rooker-Feldman* doctrine acts to bar her claims. Ms. Moore's claims are admittedly brought for the purpose of challenging or reversing the state foreclosure proceedings that have taken place. For example, Ms. Moore seeks "quiet title to property." (*See* Complaint at p. 24 of 26). Ms. Moore also seeks to enjoin the foreclosure sale that has been authorized by a state court. (*See* doc. # 2 at ¶ 15; doc. # 3 at p. 25 of 27). While Rule 120(d) states that an order authorizing a foreclosure sale is not an appealable judgment, "the applicability of *Rooker-Feldman* does not depend upon whether state court orders are appealable, but rather upon whether they completely determine the rights of the parties." *Beeler*, 2007 WL 1346591 at * 3 (citation and footnote omitted). Ms. Moore is attempting to obtain a ruling from this court that would, in effect, nullify or appeal state foreclosure proceedings that had occurred at the time of the filing of this action. Ms. Moore appears to have little likelihood of success on the merits based upon the *Rooker-Feldman* doctrine.

"The *Younger* abstention doctrine applies when there is an ongoing state court proceeding, the state court provides an adequate forum for determining the claims asserted in the federal action, and the proceedings involve important state interests which traditionally look to state law for their resolution or implicate separately articulated state policies." *Beeler*, 2007 WL 1346591 at * 3 (internal quotation marks and citation omitted). This civil action was initiated after the issuance of a foreclosure sale order by a state order.

The court "is left with a single conclusion based upon alternative doctrines." *Beeler*, 2007 WL 1346591 at * 3.

> Arguably, either *Rooker-Feldman* or *Younger* is applicable. If there was a final determination of the parties' rights at the time of the foreclosure sale of the property, for which the appropriate remedy is an independent action challenging the Rule 120 order, this Court must abstain pursuant to the *Rooker-Feldman* doctrine. This is because the Court is being asked to conduct an appellate like review over the Rule 120 order authorizing the sale. Alternatively, if there has been no final determination of the rights of the parties because the foreclosure process was not concluded, then the Court should abstain under the *Younger* doctrine.

*Beeler*, 2007 WL 1346591 at * 3. "A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present." *Borkowski v. Fremont Inv. and Loan of Anaheim, Cal.*, 368 F. Supp. 2d 822, 828 (N.D. Ohio 2005) (concluding that the *Rooker-Feldman* doctrine, *res judicata*, or the *Younger* abstention doctrine precluded federal review of a state foreclosure matter). "Actions that challenge the Rule 120 order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law." *Beeler*, 2007 WL 1346591 at * 2 (citation omitted). Regardless of whether the foreclosure sale has been concluded, this court is precluded from determining the issues presented.

For these reasons, Ms. Moore has not demonstrated a sufficient likelihood of success on the merits. *See, e.g., Winstead v. EMC Mortgage Corp.*, 621 F. Supp. 2d 1, * 4 (D.D.C. 2009) (finding plaintiff not likely to succeed on the merits of his TILA or RESPA claims based on statute of limitations); *Schroll v. Plunkett*, 760 F. Supp. 1378, 1382-84 (D. Or. 1990) (*Rooker-Feldman* doctrine and Younger abstention argument "raise[d] serious questions as to plaintiffs' probable success on the merits.").

D.   Irreparable Injury

"To constitute irreparable harm, an injury must be certain, great, actual and not

theoretical." *Schrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted). Even "serious or substantial harm is not irreparable harm." *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted). "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted). "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267.

Ms. Moore has not demonstrated irreparable injury in the absence of the injunctive relief she seeks. For example, as Ms. Moore retains a right to redeem following a foreclosure sale and any subsequent harm in losing her property may be compensated by money damages, she has not demonstrated irreparable injury. Further, to the extent that Ms. Moore brings a claim under RESPA, § 2605 provides that individuals damaged by a RESPA violation are entitled to receive actual damages, as well as any additional damages the court may allow "in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(A) & (B). Costs and reasonable attorney fees are also available to successful RESPA plaintiffs. 12 U.S.C. § 2605(f)(3). None of these remedies permit an injunction against foreclosure. For these reasons, Ms. Moore has not demonstrated irreparable injury.

E.   Balance of Hardships and Public Interest

Next, Ms. Moore must demonstrate that "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier,* 427 F.3d at 1258. Ms. Moore has not addressed or demonstrated whether the alleged harm to her outweighs the potential damage the injunction may cause to Defendant's legal interest in the real

property or whether an injunction would not be adverse to the public's interest.

IV.     Conclusion

As Ms. Moore has failed to satisfy the four prerequisites, her request for injunctive relief is properly denied.

Accordingly, IT IS RECOMMENDED that:

1.      Plaintiff Ms. Moore's "Petition for Restraining Order" (filed June 21, 2010) (doc. # 2) be DENIED.

2.      Ms. Moore's "Petition for Temporary Injunction" (filed June 21, 2010) (doc. # 3) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate

judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of July, 2010.

BY THE COURT:

　　s/Craig B. Shaffer　　
United States Magistrate Judge